IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES STEPHEN GRADY, II,<br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>Defendant. | Civil Action No. 14-0049<br>Electronically Filed |

**MEMORANDUM OPINION RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**
**(Doc. Nos. 11 and 14)**

**I.    Introduction**

Plaintiff, James Stephen Grady, II ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act (the "Act"), seeking judicial review of the final decision of the commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Parties have filed Cross Motions for Summary Judgment on the record developed at the administrative proceedings. For the following reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 11) will be **DENIED**, the Commissioner's Motion for Summary Judgment (Doc. No. 14) will be **GRANTED**, and the administrative decision of the Commissioner will be **AFFIRMED**.

**II.   Procedural History**

Plaintiff protectively filed applications for DIB and SSI on December 3, 2010, alleging disability as of July 20, 2008. R. 18. The applications were denied by the state agency on May 24, 2011. R. 80-85. Plaintiff responded on July 20, 2011, by filing a timely request for an administrative hearing. R. 104-105. On April 19, 2012, a hearing was held in Johnstown,

Pennsylvania, before Administrative Law Judge ("ALJ") Geoffrey S. Casher. Plaintiff, who was represented by counsel, appeared and testified. Timothy E. Mahler, an impartial vocational expert ("VE"), also testified. R. 46-52.

### III. Statement of the Case

In a decision dated July 12, 2012, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2. The claimant has not engaged in substantial gainful activity since July 30, 2008, the alleged onset date. 20 CFR 404.1571 et seq., and 416.971 et seq.

3. The claimant has the following severe impairments: lumbar spine arthritis, degenerative joint disease, bipolar I disorder, attention deficit hyperactivity disorder, and opioid dependence. 20 CFR 404.1520(c) and 416.920(c).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: no exposure to hazardous conditions such as unprotected heights and dangerous machinery; limited to simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes (unskilled work); no work at production rate pace or fast pace; and occasional interaction with public, co-workers and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 16, 1963 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 30, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). Doc. No. 7-2, 20-29.

## IV. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an Administrative Law Judge must do more than simply state factual conclusions, he or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The Administrative Law Judge must consider all medical evidence contained in the record and provide adequate explanations

for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the Agency's decision cannot be affirmed on a ground other than that actually relied upon by the Agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more

5

adequate or proper basis. To do so would propel the court into the domain which
Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, this Court's review is limited to the four corners of the ALJ's decision. It is on this standard that the Court has reviewed the Parties' Cross Motions for Summary Judgment.

## V. Discussion

In support of his Motion for Summary Judgment, Plaintiff argues that the ALJ committed two reversible errors. Doc. No. 13. Specifically, Plaintiff contends that the ALJ: (1) did not credit Dr. Somen, his treating physician, who opined that he would miss more than four days of work per month because he was not able to retain a regular sleep schedule; and (2) credited the partial review of a state agency medical consultant over Dr. Somen's findings based upon his unsubstantiated lay judgment. *Id.* The Commissioner argues that the ALJ's decision is supported by substantial evidence. Doc. No. 15.

### A. The ALJ Sufficiently Accounted for the Opinion of Dr. Somen

Plaintiff argues that there was conflicting evidence as to whether he could maintain regular attendance at work due to his inability to maintain a regular sleep schedule, and the ALJ did not resolve this conflict. To be eligible for benefits, a plaintiff has the burden of demonstrating a medically determinable impairment that is so severe that it prevents him or her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d) (2)(A); 20 C.F.R. §§ 404.1505, 416.905; *see Heckler v. Campbell*, 461 U.S. 458, 460 (1983). In deciding whether a claimant has met this burden, the ALJ must consider all the

6

evidence of record, especially the testimony and findings of a claimant's treating physicians. *See, e.g.*, *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987). After considering all of the evidence, the ALJ is tasked with formulating a claimant's residual functional capacity ("RFC") that reflects all impairments that the ALJ found to be supported by the record. "In making a residual functional capacity determination, the ALJ must consider all evidence before him . . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence . . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Cotter*, 642 F.2d at 705 (additional citations omitted). Here, Plaintiff alleges that the RFC is flawed.

Plaintiff appears to argue that the RFC is incomplete because, as noted by Dr. Somen, he would miss more than four days of work per month. A review of the ALJ's decision that Plaintiff is not disabled under the Act, including his formulation of Plaintiff's RFC, demonstrates that the ALJ considered all the evidence and included all credited impairments in Plaintiff's RFC assessment and explained why other alleged impairments were not included. Doc. No. 7-2, 24.

The ALJ did not credit Dr. Somen's finding that Plaintiff was unable to maintain proper attendance at work due to an irregular sleep schedule, because he found this finding to be unpersuasive. Doc. No. 7-2, 25. As discussed by the ALJ, Dr. Somen, in a mental status examination, reported that:

> Claimant was responding to treatment; making progress as he gains insight; could understand, remember and carry out simple instructions; could make simple decisions; could ask questions; and could adhere to basic standards of neatness (Exhibit 12F). At this time the claimant was assessed a Global Asessment of Functioning (GAF) score of 65 which is inconsistent with an individual who is incapable of sustained competitive work activity (Exhibit 12F; see the Diagnostic and Statistical Manual of Mental Disorders Fourth Edition, 1994).

7

Id. This discussion evidences the inconsistency in Dr. Somen's evaluations, and why the ALJ gave his opinion partial weight. Further, the ALJ noted that Dr. Somen's opinion was inconsistent with Dr. Wong's assessment of Plaintiff, who found that Plaintiff could maintain regular attendance. [1] Doc. No. 7-2, 26. After consideration of Plaintiff's record, the ALJ found that Dr. Somen's finding is not substantial enough to support "greater or additional restrictions" on the Plantiff's RFC. Id. Therefore, because the ALJ incorporated all limitations he found to be supported by the record and explained why some of Plaintiff's alleged impairments were not included; his decision not to award benefits is supported by substantial evidence. That is the Court's sole inquiry.

### B. The ALJ's Determination Was Not Based On His Own Lay Judgment

Plaintiff's second argument is that the ALJ used his own medical judgment in his RFC determination by giving controlling weight to the reviewing physician, Dr. Brace, and his opinion, which was not based on the "complete record." Plaintiff argues that Dr. Brace did not have the following information: (1) Plaintiff's diagnosis of bipolar disorder in June of 2011; (2) Plaintiff's full treatment notes, after May of 2011, which indicated his inability to maintain a proper sleep schedule; and (3) reports of Plaintiff's visit to an emergency room due to panic attacks in July of 2011. Doc. No. 13, 6-7.

As previously discussed, the ALJ found Dr. Brace's findings to be more persuasive than Dr. Somen's. Doc. No. 7-2, 25. Much of the ALJ's decision not to credit Dr. Somen is based on medical evidence such as mental health progress notes in February 2012, and improving moods and working medications in April 2012. Doc. No. 7-2, 25-26. These findings were noted after Plaintiff's diagnosis of bipolar disorder and his panic attacks. Further, bipolar I disorder was included in the ALJ's findings of Plaintiff's severe impairments. Doc. No. 7-2, 20.

---

[1] Plaintiff reported to Dr. Wong for primary care on April 21, 2011 and on November 7, 2011. Doc. No. 12, 7-9.

Plaintiff asserts that the ALJ "injected" his own medical judgment because he concluded that Plaintiff's GAF assessment of 65 contradicted Dr. Somen's opinion that Plaintiff would need to miss more than four days of work per month. The ALJ based his determination on a complete review of the record, not simply Plaintiff's GAF score.[2] Doc. No. 7-2, 26. The ALJ did not use his own medical judgment, but rather, included only those impairments that he found to be consistent throughout the record. *Id*. Unlike in *Cadillac v. Barnhart*, the ALJ did not reject evidence based on his own medical judgment, but credited some evidence over the other. 84 F. App'x 163, 168 (3d Cir. 2003).

Here, the ALJ found Dr. Somen's findings to be internally inconsistent, and inconsistent with the assessments of other treating physicians. *Id*. The internal inconsistencies in Dr. Somen's assessments are an adequate basis for an ALJ to disregard his findings as unpersuasive. The Court finds that the ALJ properly addressed Dr. Somen's findings and notes, considered the entire record, and did not "inject" his own medical opinion. Therefore, the Court sees no reason to disrupt the ALJ's decision.

**VI.    Conclusion**

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence. Therefore, the Commissioner's administrative decision will be **AFFIRMED**. An appropriate Order follows.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:    All Registered ECF Counsel and Parties

---

[2] The GAF scale is a 100-point rating system that takes into account overall psychological, social and, occupational functioning of people over 18 years of age and is developed by the American Psychiatric Assocaition. *Diagnostic and Statistical Manual of Mental Disorders—Fourth Edition (DSM-IV-TR)* 34 (4th ed., text rev., 2000). A score in the 61-70 range (as Plaintiff's is), means "some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful personal relationships." *Id*.